## NATHAN COLLINS v. JAMES K. LARKIN.

Pound-keepers, under our Statutes relative to impounding, have no authority to confine cattle taken *damage feasant*, in any other place than the public town pound. Where sheep, taken *damage feasant*, were delivered to the pound-keeper, and, there being no public pound, were by him confined in his own yard, such confinement was held not to constitute a legal impounding.

THE facts in this case are stated in the opinion of the Court delivered by BRAYTON, J.

This was an action of tresspass brought by the plaintiff, in which he alleges that certain sheep of his were driven and worried by the defendant, for which injury he claimed damages.

On the trial of the action, at the August term, 1848, it appeared in evidence, that the sheep in question escaped

Nathan Collins *v.* James K. Larkin.

from the public highway, in Hopkinton, into the defendant's close, and that the defendant, finding them *damage feasant*, drove them from his land, for the purpose of impounding them, to the residence of one Burril Slocum, who had been chosen by the town of Hopkinton poundkeeper, and there delivered them to the said Slocum as such pound-keeper ; that said Slocum there confined the said sheep in his own yard, using the said yard as a pound. It also appeared in evidence, that there was no public town pound in said town of Hopkinton, in which said sheep could be impounded, the town having neglected to provide one.

Upon these facts, the Chief Justice charged the jury, that the delivery of the sheep to the pound-keeper, at any other place than the pound, was not a legal impounding ; that to constitute a legal impounding, the delivery must be at the pound ; and that if there were no public town pound, the pound-keeper could not impound in his own yard, and that such impounding would be no justification to the party distraining.

The jury returned their verdict for the plaintiff, and the defendant now, by his petition, asks that a new trial may be granted him, and for reasons says, the said charge was erroneous, and that "said jury ought to have been charged that a delivery to a pound keeper was sufficient to justify the defendant."

In the argument of the cause, it was contended on the part of the defendant, that the delivery of a distress, to the person appointed pound-keeper, was sufficient of itself to justify the distrainer, and that it was not incumbent upon him, to inquire whether there were in fact any pound or not.

Nathan Collins *v.* James M. Larkin.

By the common law, if one distreined damage feasant, he must, in order to stand justified, drive the cattle distreined to some pound and there actually impound them, and, although, while on the way thither, (if the distress were lawfully made,) no one, not even the owner, could lawfully take them from him, yet, unless the party distreining proceeded to put the distress in some pound, where it was to be kept, the whole proceedings became by relation unlawful and a trespass.

Until then, the distress, (if unlawfully made,) might be forcibly taken by the owner, even on the way to the pound, and he could justify the forcible taking, by showing the fact, that the distress was unlawfully made. The distreinor must, in this case, bring his *action of rescous*, in which the legality of the distress might be tried.

When once the distress, however, was within the pound in the actual enclosure, if the owner took the cattle by force, he became liable to a different action, viz : an action for pound breach. In this action, he could not justify for any illegality on the original taking, however wrongful it might have been, for the distress was now, as the Books say, in the custody of the law, as it was before in the custody of the party, and no one could be justified in taking it out. For any illegality in the original taking, the owner was now put to his writ of replevin as his only remedy.

The distreiner might put the distress into a common pound, but he was not obliged to do so. He might put it into a private pound, into his own close or other inclosure where he pleased, which for this purpose was a pound.

Whether these provisions of the common law, allowing private pounds, were adopted here or deemed applicable to our circumstances, is, at least, matter for doubt. However that might have been, prior to 1745, in that year it became the subject for legislation, and an act was then passed, the first section of which provides, " that if any neat cattle, horses, sheep, or hogs, shall break through a lawful fence into the grounds of any person, the person aggrieved shall have the liberty either to recover his damages by an action against the owner or owners thereof, or to impound the said cattle, horses, sheep or hogs, in *the public town pound*, until the damages and charge of impounding be paid by the owner or owners." The sixth section of this act expressly repeals " all laws heretofore made and passed for impounding cattle, horses, sheep and hogs." Under this act there could be no private pounds. They were in effect obolished, if they were ever allowed, as were all others, except the public town pound. By an act, passed in 1669, it had been made the duty of each town to provide " one public pound for the impounding of horses, neat cattle, sheep, &c.," and this under a penalty of £10.

From the passage of the impounding act of 1745, every distress was required to be put and kept in *the public town pound*, and the distreinor could not justify himself by putting it elsewhere. Until there, it was liable to be rescued, if *illegally* made.

So, the act remained from its first enactment in 1745, down to the last revision of the statute in 1844, when the impounding act was so far altered that it omitted to provide in *express terms*, in what place the distress should be impounded ; but gave the party a right " to recover his damages either by action against the owner of the

trespassing beast or by *impounding them*," without pre-
scribing where. This omission however could not change
the effect of the act. The impounding must still be in a
lawful pound. All other impounding, except in the *public
town pound*, had in 1745 been abolished, if any such had
before been allowed, and is not in the last revision re-
stored. It is still made the duty of each town to provide
a public town pound and to appoint a pound keeper.

But it is urged in the argument, that, if there be in
fact no such public town pound, the pound-keeper has,
by virtue of his office, authority to provide one ; that if
a distress be offered him, he must impound it at his peril,
and, if the town has neglected its duty in this respect,
it is the duty of the pound-keeper to provide one of his
own authority, and this in analogy to the office of sheriff.

The sheriff was by the common law authorised to con-
stitute a jail, if there were none in his county, and this
from a supposed necessity ; for, by virtue of his office of
sheriff, he had the custody of all prisoners from the time
of the arrest until their discharge from imprisonment, as
well before as after commitment to the jail. It might
be necessary that he should retain the custody of them
until they should be discharged by law. But it was not
so with him, who was jailor only, who was appointed
to keep the jail. He had no power to arrest. He was
the keeper of no prisoner, except such as arrested by
others were committed to the jail of which he was
keeper. By virtue of these commitments to his jail he
became their keeper. From this time and not before,
his duty and his liability commenced.

There was no necessity, no reason, why he should be
clothed with any power to erect a jail and he never was ;
and so we apprehend a pound keeper has no necessity to

provide a pound. He is simply keeper of the pound, not the distreinor. The party himself makes the distress, and is authorised by the law to retain the custody of it, until committed to the pound. It is his duty to commit it, and by virtue of such commitment and not otherwise, the custody of the distress passes from him to the pound keeper. From this time and not before, is the pound-keeper liable for the safe keeping.

New trial denied.